## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLEN KELLY,** | : | **CIVIL NO. 4:10-CV-2532** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ROBERT J. KARNES, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

## I.    STATEMENT OF FACTS AND CASE

This is a pro se civil rights action brought by Allen Kelly, a prisoner at Lebanon County Correctional Facility.   In his complaint, Plaintiff has brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated the First Amendment to the United States Constitution by interfering with his access to the courts and retaliating against him for engaging in protected conduct.   Both claims stem from alleged violations of his First Amendment rights that occurred during his incarceration at the Lebanon County Correctional Facility.   The complaint concerns incidents relating to: (1) the dismissal of Kelly's appeal by the Third Circuit Court of Appeals on October 5, 2010; (2) an arraignment hearing in the Court of Common

Pleas of Lebanon County on October 13, 2010; and (3) Petitioner's attempt to file a complaint against a Lebanon County Public Defender on December 2, 2010.  In his complaint, Kelly names the following eight Lebanon County Correctional Employees as Defendants in this action: Warden Robert J. Karnes; Deputy Warden Anthony J. Hauck; Correctional Officers Edward Van Dusen, Jed Gerdes, Joey Santiago, Derr, and Barry; and Tina Verna, a counselor.

According to the well-pleaded facts set forth in his complaint, on October 5, 2010, Kelly received an order from the United States Court of Appeals for the Third Circuit dismissing an appeal that he filed as untimely, despite his contention that he filed the appeal in a timely manner.  (Compl., ¶¶1, 2.)  Kelly believed that the dismissal of his appeal stemmed from prison officials mishandling his legal mail and causing delay. (Id., ¶3.)  For this reason, he filed a grievance on October 11, 2010. (Id., ¶4.)  He was denied the relief that he requested in the grievance and filed an appeal, handing it to Officer Barry on October 26, 2010.  (Id., ¶¶5, 6.)  After Warden Karne informed him that his earlier appeal did not appear on file, Kelly refiled the appeal, handing it to Officer Joey Santiago on November 17, 2010.  (Id., ¶¶7, 8.) Warden Karne denied the appeal on December 7, 2010, and Kelly, who was at that time housed in the prison's special housing unit ("SHU"), received the denial on December 10, 2010. (Id., ¶¶9, 10.)  Kelly states that he sent more than one letter to

2

the Clerk of the United States Court of Appeals addressing this matter –presumably the potential mishandling of his mail by prison officials– but received no response. (<u>Id.</u>, ¶11.)

Kelly grew more concerned about his legal mail as a result of an arraignment proceeding on October 13, 2010, at the Lebanon County Court of Common Pleas. (<u>Id.</u>, ¶12.) At the arraignment, the judge informed Kelly that he did not receive a copy of a motion Kelly claimed to have filed asserting ineffectiveness of his appointed counsel, and a motion to recant a preliminary hearing. (<u>Id.</u>) Kelly's copy had been time stamped October 7, 2010, by the clerk of court. (<u>Id.</u>) Refusing to share his lone copy with the judge during the proceeding, Kelly subsequently mailed a copy to the judge's chambers, but did not receive a response. (<u>Id.</u>, ¶¶12,13.) In the absence of a response, Kelly sent two follow-up letters to the judge. (<u>Id.</u>, ¶14.) Once again, he did not receive a response. (<u>Id.</u>)

Though not explicitly stated as such, in pleading these facts and expressing concern over the mishandling of his mail, we understand Kelly to be alleging that the prison officials named as defendants in this action violated his right of access to the courts under the First Amendment of the United States Constitution.

Finally, on December 1, 2010, Kelly sent a complaint concerning a Lebanon County Public Defender to the Disciplinary Board of the Supreme Court of

Pennsylvania that was returned to him, marked with "Not Deliverable As Addressed Unable to Forward." (Id., ¶¶15, 16.)  Concerned that this piece of mail had also been tampered with, Kelly took up the matter verbally with Warden Hauck, who told him that he was crazy and that he believed everyone was against him.  (Id., ¶¶16, 17.) Upset by this interaction, Kelly sent Warden Hauck a letter defending his own sanity and expressing concerns about his legal mail. (Id., ¶18.) On December 8, 2010, Kelly met with Counselor Tina Verna to discuss the issues with his legal mail. (Id., ¶19.) The following day she informed him of the proper address of the Disciplinary Board via email. (Id., ¶22.)  It upset Kelly that Counselor Verna acquired the correct address from the Public Defender's Office, which she apparently had done in light of the complaint's allegations against a public defender.  (Id., ¶24.)  Kelly expressed his disapproval in an Inmate Request Form directed to Counselor Verna that he handed to Officer Van Dusen. (Id., ¶25.)  After reading the request form, Officer Van Dusen contacted Warden Hauck. (Id., ¶26.)

Warden Hauck called Kelly to the block office. (Id.)  From there, Kelly was sent to the Special Housing Unit ("SHU"), where he was provided with a misconduct report. (Id.)  The misconduct report cited Kelly's allegations concerning the mail, argumentative and disagreeable behavior toward staff, and quotes the request slip that Kelly had directed at Counselor Verna. (Id., ¶27.)  The quote from Kelly's request

slip reads, "Why would you request the address from the public defenders office? Now I see how you work. Your [sic] in cohoots [sic] with them. I should have known better than to trust you being that your [sic] married to a detective." (<u>Id.</u>) The Warden ordered a major misconduct in response to this behavior, writing that "[Kelly] is constantly trying to make everything seem like he is 'plotted' against by prison staff. I feel that staff don't have to be falsely accused of conspiring against an inmate when in truth they were actually trying to help him solve a problem." (<u>Id.</u>) Petitioner alleges that the punishment he received for submitting the request slip violated his rights under the First Amendment to the United States Constitution. (<u>Id.</u>, ¶29.)

Defendants have now moved to dismiss the complaint, arguing that Kelly fails to state a cause of action upon which relief can be granted, does not state that any Defendants were personally involved in the alleged unconstitutional activity, and fails to allege that Kelly suffered actual injury with respect to the alleged denial of his access to the courts.  (Doc. 26)  Plaintiff has filed a memorandum in opposition to Defendants' motion, (Doc. 32), to which Defendants have replied, (Doc. 34).

## II.   **DISCUSSION**

### A.   **Rule 12(b)(6)– The Legal Standard.**

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules

of Civil Procedure provides that a complaint should be dismissed for "failure to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6.)  With respect to

this benchmark standard for legal sufficiency of a complaint, the United States Court

of Appeals for the Third Circuit has aptly noted the evolving standards governing

pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.
> 2008)]and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>,

20 F.3d 1250, 1261 (3d Cir. 1994.)  However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v.

Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court

need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  In keeping with the principles of Twombly, the Supreme Court underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations. When there are well-pleaded factual
allegations, a court should assume their veracity and then determine
whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain
more than mere legal labels and conclusions. Rather, a complaint must recite factual
allegations sufficient to raise the plaintiff's claimed right to relief beyond the level
of mere speculation. As the United States Court of Appeals for the Third Circuit has
stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the
Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this
analysis both when assessing the adequacy of the factual assertions set forth in the
complaint, and when examining whether a complaint states a viable cause of action.

Applying these standards, we find that portions of Kelly's complaint concerning his access to the courts presently fails to state a cause of action upon which relief may be granted.  Plaintiff, however, adequately states a retaliation claim in the complaint that is not addressed by Defendants' motion.  Accordingly, we will recommend that Defendants' motion be granted in part and denied in part.

## B.    Kelly's Access-to-Courts Claim.

In large part, the substance of Kelly's complaint revolves around concerns that Defendants from the Lebanon County Correctional Facility have violated his right of access to the courts under the First Amendment  by mishandling and delaying the delivery of his legal mail.

Kelly's claim thus calls upon us to first consider the contours of the constitutional right of access to the courts.  Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. See Bounds v. Smith, 430 U.S. 817 (1977).  As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law.  Id. at 827.  ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the

preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.").

With these general principles in mind, we find that Kelly has failed to properly state an access-to-courts claim in several ways. First, the complaint is entirely speculative and insufficient under the <u>Twombly</u> standard. Second, though he lists eight defendants, none of the well-pleaded facts indicate that any of the eight prison officials should be held liable for the deprivation of his right of access to the courts. Finally, the claim is premature since Plaintiff has suffered no actual injury as a result of the alleged interference with his legal mail.

1.    **Kelly Fails to State A Claim of Denial of Access to the Courts Since the Facts Alleged in the Complaint are Speculative and Insufficient.**

Kelly's access-to-courts claim arises from the allegation that prison officials were mishandling his legal mail. In response to the dismissal of an appeal that he believed to be timely on October 5, 2010, Plaintiff "assumed that perhaps the prison personell (sic) officers responsible for handling mail delayed sending it out for some unknown reason." (Compl., ¶3.) While Kelly's complaint contains more detailed accounts concerning other aspects of his stay at Lebanon County Correctional Facility, it does not contain any more specific allegations with respect to the mishandling or delay of his legal mail.

10

As defined by the Supreme Court in <u>Twombly</u>, the pleading rules for complaints filed under §1983 require that a petitioner's allegations "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). In its application of <u>Twombly</u>, the Third Circuit requires that a complaint do more than merely allege plaintiff's entitlement to relief, but actually show an entitlement with its facts. <u>See</u> <u>Fowler</u> 578 F.3d 203, 210-11.

Kelly's assumption that "perhaps the prison personell (sic) officers responsible for handling mail delayed sending it out for some unknown reason," is pure speculation. Never substantiated by a more detailed account elsewhere in the complaint, the complaint fails to allege any facts that might show that Plaintiff is entitled to relief. The access-to-courts claim thus runs afoul of the <u>Twombly</u> standard and, as such, fails to state a claim upon which relief can be granted.

Moreover, the docket sheets stemming from each case at issue indicate that the Court received both pieces of legal mail at issue within three days after Kelly put them in the mail at the Lebanon County Correctional Facility. The timely arrival of Kelly's legal mail at each courthouse would seem to demonstrate that Kelly's allegations about prison officials intentionally delaying his mail were not only speculative, but also entirely unfounded.

2.     **Kelly Fails to State A Claim Against Defendants Karne, Santiago, Barry, Gerdes, Derr, or Verna Since No Personal Involvement in Unconstitutional Conduct Is Alleged Against Those Prison Officials.**

It is axiomatic that liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct, shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).  Kelly has failed to allege that Defendants Karne, Santiago, Barry, Gerdes, Derr, or Verna had any personal involvement with respect to his claims that his right of access to the courts was impaired.  Moreover, to the extent that Kelly does make allegations against these defendants, they are patently insufficient to state a claim.

For example, Kelly identifies Officers Barry and Santiago as the officers who were to deliver appeals that he wished to file after his grievances had been denied with respect to his claims of interference with his right of access to the courts.  Upon review of the complaint, however, we find that the apparently minor role that these two men played in the delivery of Plaintiff's grievances is plainly insufficient to permit a claim for a constitutional violation to survive Defendants' motion to dismiss, and the allegations do not even suggest that these defendants were personally involved in denial of Kelly's right of access to the courts.

Plaintiff's inclusion of Officers Derr and Gerdes among the defendants in this case appears to be barren of any factual basis, as he does not even mention either officer in his statement of his claim.  In the absence of allegations or descriptions of the roles these officers allegedly played in the deprivation of Kelly's rights, there is simply no basis to permit Kelly's claims against these Defendants to go forward, and they should be dismissed.

With respect to Plaintiff's allegations against Counselor Verna, it seems that Plaintiff was upset that this Defendant obtained for him the proper mailing address for a disciplinary complaint that he had attempted to file against someone in the Public Defender's Office.  Aside from the fact that Counselor Verna is apparently alleged to have committed a constitutional violation by attempting simply to help Plaintiff obtain necessary information, we find that Plaintiff's mere disapproval of the methods by which Counselor Verna acquired a mailing address is insufficient to state a cognizable claim under the United States Constitution.

Turning to Plaintiff's claims that Warden Karne or Deputy Warden Hauck should be liable for interfering with his legal mail or his access to the courts, we find that the complaint fares no better.  Kelly does not allege that either Warden Karne or Deputy Warden Hauck personally interfered with Plaintiff's mail.  The inclusion of both of these prison officials as Defendants in the access-to-courts claim seemingly

relies on a theory of respondeat superior, rather than upon allegations that either of these Defendants was personally involved in the alleged interference with Kelly's right of access to the courts.  This deficiency warrants the dismissal of Kelly's access-to-courts claim against these Defendants because it is well established that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  See Iqbal, 129 S.Ct. 1937, 1948.

In § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.  Id.  With respect to prison supervisors, Plaintiff can show personal involvement through "allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  In this case, the complaint does not contain allegations of Warden Karne's or Deputy Warden Hauck's personal direction, knowledge, or acquiescence in the mishandling of Plaintiff's legal mail, or that they were otherwise personally involved in any actions taken to interfere with Kelly's right of access to the courts.

Kelly has alleged only that he made a verbal complaint to the Deputy Warden about the alleged mishandling of his mail.  While this alleged fact might show that Deputy Warden Hauck had personal knowledge, or was placed on notice, of Kelly's allegations regarding interference with his legal mail, we note that Kelly alleges that

14

he made this complaint weeks after the alleged mishandling of his mail occurred. Because Kelly has not alleged that Defendant Hauck had any personal involvement in any alleged mishandling of his legal mail, we can perceive no basis to permit this claim to proceed against Defendant Hauck.

With respect to Defendant Karne, Kelly attempts to allege that Warden Karne was personally involved in alleged unconstitutional conduct because Warden Karne communicated with Kelly about the dismissal of his grievances and appeals, which apparently related to Kelly's claims that prison staff were interfering with his mail. We find Kelly's efforts to demonstrate the personal involvement of Warden Karne to be plainly insufficient to state a claim in this case under 42 U.S.C. § 1983.  It is well-settled that inmates do not have a constitutional right to a prison grievance system. See Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138; Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."); see also Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure

to comply with grievance procedure is not actionable). Finally, it has been held the failure of prison supervisors to agree with the inmate's claims, standing alone, simply does not rise to the level of a constitutional infraction. See Diaz v. Palakovich, No. 07-2190, 2009 WL 811712 (M.D.Pa. March 16, 2009). Consequently, Warden Karne's response to Kelly's grievance does not support a constitutional claim, regardless of Kelly's allegation that his grievance concerned matters of constitutional dimension.

Because Kelly does not allege either Warden Karne or Deputy Warden Hauck had personal involvement in the alleged mishandling of his mail, and because no liability can be established on the basis of respondeat superior, Plaintiff's First Amendment claim alleging interference with his right of access to the courts should be dismissed with respect to Defendants Karne and Hauck.

### 3.   Kelly's Claim Concerning Denial of Access to the Courts Fails Because He Has Not Alleged Any Actual Injury.

Along with the other fundamental flaws identified in Kelly's access-to-courts claim, we also find that Kelly has failed to identify any way in which he was injured due to the alleged denial of his right of access to the courts.

In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court provided further definition and guidance regarding the scope and nature of a prisoner's right of access

to the courts.  In <u>Lewis</u>, the Court instructed that courts should avoid construing this right in abstract or theoretical terms, but should instead focus on concrete outcomes when assessing such claims.  As the Court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id.</u>, at 823 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

> <u>Bounds</u> itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, <u>see id.</u>, at 821-825. n2 Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id.</u>, at 832.

518 U.S. at 351-52.

Thus following <u>Lewis</u>, courts have consistently recognized that access-to-court claims by prisoners require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff.  <u>See, e.g.</u>, <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 U.S. Dist. LEXIS 18133, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 U.S. Dist. LEXIS 4034, 1998 WL 150961 (E.D. Pa. March 31, 1998).

Within the complaint, Kelly expresses general concern that prison officials may have mishandled his mail and alleges that access to legal resources has been inadequate.  In both instances, however, he does not indicate any way in which the alleged interference led to actual injury during the dismissal of his appeal on October 5, 2010,[1] or the arraignment proceeding held on October 13, 2010[2].  Thus, even if he

---

[1] The Record pertaining to the October 5 decision states that the dismissal of Plaintiff's appeal did not stem from the untimely arrival of any legal mail.  (Doc. 34, Ex. G.)  The court explained that the dismissal stemmed from the fact that Plaintiff had three previous cases dismissed as frivolous and that, as a prisoner, he needed to allege that he was "under imminent danger of serious physical injury" in order to proceed in forma pauperis under 28 U.S.C. § 1915(g).  (<u>Id.</u>)  Despite two letters from the Clerk's Office informing him of this requirement on September 14 and October 19, 2010, Plaintiff failed to plead as such and his appeal was denied. (<u>Id.</u>)

[2] According to the docket sheet for the criminal action that gave rise to the arraignment proceeding of October 13, 2010, the Court did receive copies of Plaintiff's legal mail on October 7, 2010, despite the fact that the judge did not have copies in front of him at the proceeding itself. (Doc. 28, Ex.F, p.6).

had pleaded enough facts to meet the <u>Twombly</u> standard and alleged the personal involvement of Defendants, the absence of an alleged injury proves fatal to Kelly's access-to-courts claim.

Accordingly, we find that Plaintiff has failed to allege sufficient facts to state a claim for a First Amendment violation based upon the denial of his right of access to the courts, and this claim should be dismissed with respect to all defendants.

### C.   Kelly's Retaliation Claim.

In his second claim, Kelly alleges that he suffered retaliatory punishment after he engaged in conduct protected by the First Amendment.  As best we can tell, Kelly is alleging that he engaged in protected First Amendment conduct by submitting a request slip containing a note for Counselor Verna.  Kelly allegedly filled out a request slip containing a note for Counselor Verna on December 9, 2011.  He claims to have handed this to Officer Van Dusen.  Upon reading it, Van Dusen turned over the request to Deputy Warden Hauck.  Later that day, Kelly was transferred to the SHU and issued a misconduct by Deputy Warden Hauck apparently in response to what Kelly had written on the request slip. (Compl., ¶¶24-28.)  As the only prison officials described as coming into contact with the request slip, Defendants Hauck and Van Dusen are the only two Defendants implicated in the retaliation claim.

As explained below, reading the complaint liberally, we find that Kelly has managed to state a claim of First Amendment retaliation claim against Deputy Warden Hauck that is unaddressed in Defendants' motion to dismiss. For this reason, it is recommended that Defendants' motion to dismiss Plaintiff's complaint be denied in part. However, because Plaintiff's allegations against Officer Van Dusen are plainly insufficient to state a claim for retaliation against that Defendant, it is recommended that Officer Van Dusen be dismissed from this action.

1. **Kelly Has Managed to Allege a Prima Facie Claim for First Amendment Retaliation Against Deputy Warden Hauck.**

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). In Allah v. Seiverling, the Third Circuit Court of Appeals held that, "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." 229 F.3d at 224-25 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). Accordingly, the law of this Circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Id. at 225.

20

A prisoner claiming that prison officials have retaliated against him for exercising his rights under the First Amendment must prove that: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct."   Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)).   An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights."   Id. at 10 (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); see also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)).   The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

Once a plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter, 292 F.3d at 158.   When analyzing a retaliation claim, courts are to bear in mind that the task of prison administrators and staff is difficult, and the

decisions of prison officials require deference, particularly where prison security is concerned.  Rauser, 241 F.3d at 334.

In the complaint, Plaintiff identifies the request slip that he sent to Counselor Verna on December 9, 2010, as the conduct he claims is protected by the First Amendment.  Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  See Dickson, 2010 U.S. Dist. LEXIS 30676, (citing Allah, 229 F.3d at 224-25).  It has been clearly established that the filing of both lawsuits and grievances by prisoners are protected activities.  See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct).

In cases within this circuit relating to prisoner retaliation claims, inmate request slips – though cited less frequently –  have been acknowledged within the range of activity that may fall within the ambit of First Amendment protection.  See Dickson, at *14 (where the description of prisoners' protected conduct includes the right to "make complaints, file grievances, request slips and legal actions."); see also Curtician v. Kessler, 2010 U.S. Dist. LEXIS 142858, *18 (W.D. Pa. Nov. 29, 2010) (finding plaintiff satisfied first prong of a retaliation claim "since filing

grievances, requests to staff, and complaints are clearly protected forms of free speech under the First Amendment."). While request slips serve as a general avenue of expression relied upon by prisoners, they also serve as an important step within the grievance process. See Alexander v. Fritch, 2010 U.S. Dist. LEXIS 28905, *40 (W.D. Pa. March 26, 2010) (describing that the prison administrative policy provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member.). Based on the inclusion of request slips as protected activity in similar cases and their significance in the grievance system within prisons, this avenue of communication may qualify as protected conduct under the First Amendment.[3] As such, Kelly has alleged facts to show that he engaged in protected conduct, and, therefore, satisfies the first prong at the pleading stage of this action.

The allegations in the complaint also successfully satisfy the second and third prongs of the prima facie test. In this Circuit, Kelly's transfer to the SHU may qualify as adverse treatment for the purposes of a retaliation claim. See Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003) (where the prisoner's transfer to administrative

---

[3] We note that Defendants have failed to argue or demonstrate that Kelly's use of requests slips is not subject to any First Amendment protection.

segregation qualified as adverse action); <u>Allah</u>, 229 F.3d at 225; <u>see also</u> <u>Brooks v.</u> <u>Smith</u>, 2007 U.S. Dist. LEXIS 82371 at *29 (M.D. Pa. Nov. 6, 2007) (finding Plaintiff's transfer to the SHU constituted adverse action); <u>Curtician</u>, 2010 U.S. Dist. LEXIS 142858.

Moreover, Kelly has alleged causation through both the unusually suggestive timing of the punishment he received and the reasons Mr. Hauck provided within the misconduct itself.  Shortly after turning the request slip over to Officer Van Dusen, Kelly was called to the block office and thereafter was sent to the SHU.  In the misconduct report issued to him a few hours later, Mr. Hauck quotes the request slip and writes that, after it was turned over to him by Officer Van Dusen, a major misconduct was ordered.  In the conclusion of the misconduct, Deputy Warden Hauck stated that, "I feel that staff don't have to be falsely accused of conspiring against an inmate when in truth they were actually trying to help him solve a problem." (Compl., ¶27.)  In this way, the record suggests that the request slip, in which Kelly accused Counselor Verna of being in "cahoots" with the Public Defenders Office, was a substantial motivating factor in Mr. Hauck's decision to issue a misconduct and send Kelly to the SHU.

Since Kelly has successfully pleaded a retaliation claim, the burden shifts to Defendants to show that Mr. Hauck would have made the same decision, absent the

request slip, for reasons related to a penological interest, or to otherwise show why the claim should be dismissed.  See Carter, 292 F.3d at 158.  In this evaluation, the Court gives substantial deference to the decisions of prison officials, recognizing the difficulty of their task in maintaining prison security.  See Rauser 241 F.3d at 334. In the motion to dismiss Plaintiff's complaint, Defendant Hauck simply fails to address the retaliation claim.  As such, though it is possible that Defendant Hauck may ultimately demonstrate that he is entitled to preliminary disposition of Kelly's retaliation claim, he fails to show that the claim should be dismissed at this time. Since Kelly has managed to allege sufficient facts to support a claim for First Amendment retaliation against Deputy Warden Hauck, it is recommended that Defendants' motion to dismiss Plaintiff's complaint be denied with respect to Plaintiff's retaliation claim.[4]

## 2.    Plaintiff's Retaliation Claim Against Officer Van Dusen Should Be Dismissed.

The minimal role that Officer Van Dusen is alleged to have played in the incident – reading and delivering Kelly's request slip to Mr. Hauck – is plainly insufficient to support a claim for First Amendment retaliation.  While punishment

---

[4] Defendants may seek to respond to the retaliation claim in either a motion for summary judgement or in their response to any amended complaint filed by Plaintiff in response to the foregoing recommendation.

applied in response to protected speech may in some cases raise legitimate constitutional concerns, Van Dusen's delivery of Kelly's request slip to his superior does not violate any of Plaintiff's constitutional rights.  We also find that Kelly's cursory description of Van Dusen's collection of his property during his transfer to the SHU also fails to state a claim under § 1983.  Because nothing within the complaint is sufficient even to allege that Officer Van Dusen retaliated against Kelly, it is recommended that he be dismissed as a Defendant in this action.

### III.   <u>CONCLUSION</u>

In his complaint, Plaintiff alleges two separate violations of his rights under the First Amendment of the United States Constitution.  With respect to his first claim alleging that his right of access to the courts was impaired, Kelly fails to meet the pleading standards under <u>Twombly</u>, and entirely fails to allege that he suffered actual injury as a result of the alleged deprivation, which is fatal to his claim.  It will, therefore, be recommended that the Court dismiss Kelly's right-of-access claim with respect to all defendants.  Similarly, because he fails to allege personal involvement of Defendants Karne, Santiago, Barry, Gerdes, Derr, Verna, and Van Dusen in any unconstitutional behavior, they should be dismissed from this action.

However, we find that Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against Deputy Warden Hauck, and we note that this

26

Defendant has neither responded adequately to this claim, nor demonstrated that the claim should be dismissed.  Accordingly, we will recommend that the Court deny Defendants' motion only insofar as it alleges a claim for First Amendment retaliation against Deputy Warden Hauck.

## IV.   **RECOMMENDATION**

Upon due consideration, and for the reasons set forth above, IT IS HEREBY RECOMMENDED THAT Defendants' motion to dismiss Plaintiff's complaint (Docs. 17, 21) be GRANTED in part and DENIED in part.  It is recommended that the Court dismiss all claims against Defendants Karne, Santiago, Barry, Gerdes, Derr, Verna, and Van Dusen.  It is further recommended that the Court deny Defendants' motion with respect to Plaintiff's claim for First Amendment retaliation against Defendant Hauck.

> The parties are further placed on notice that pursuant to Local Rule 72.3: Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

***S/Martin C.  Carlson***
Martin C. Carlson
United States Magistrate Judge

Dated: August 30, 2011