IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN KELLY, | : | CIVIL NO. 4:10-CV-02532 |
| | : | |
| Plaintiff, | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| ROBERT J. KARNES, et al., | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

I.   **Introduction**

In the Prison Litigation Reform Act, Congress established a series of procedures relating to prisoner civil litigation in federal court, procedures "designed to filter out the bad claims and facilitate consideration of the good." Jones v. Bock, 549 U.S. 199, 204 ( 2007). One critical component of these reforms calls upon federal courts to perform a gatekeeping function with respect to *pro se* inmates who repeatedly seek leave to proceed *in forma pauperis* while filing frivolous claims. As part of this statutorily mandated process, we are obliged to screen civil complaints lodged by *pro se* litigants who wish to proceed *in forma pauperis*, deny such leave to prisoners who have on three or more prior occasions filed frivolous or meritless

1

claims in federal court, and dismiss these inmate complaints, unless the inmate alleges facts showing that he is in imminent damage of serious bodily harm. 28 U.S.C. §1915(g).

In the instant case, we are now called upon to perform this function, a function which is an integral part of these Congressional "reforms designed to filter out the bad claims and facilitate consideration of the good"in this field Jones v. Bock, 549 U.S. 199, 204( 2007). Upon consideration of this case, we conclude that the plaintiff, Allen Kelly, was at the time of the filing of this complaint a "prisoner [who] has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). We further conclude that Kelly has not, and cannot, credibly allege that he is in imminent damage of serious bodily harm as a result of the acts alleged in this complaint. Therefore, consistent with §1915(g)'s mandate, we are compelled to recommend that "[i]n no event sh[ould] [this] prisoner [be authorized to continue to] bring [this] civil action," *in forma pauperis*. 28 U.S.C. § 1915(g). Accordingly, for the reasons set forth below, it is recommended that Kelly be denied further leave to proceed *in forma pauperis*, and this complaint should be dismissed.

## II.  Statement of Facts and of the Case

### A.  Allen Kelly's Litigation History

The plaintiff, Allen Kelly, is a state prisoner and a prodigious, if prodigiously unsuccessful, federal court litigant. Indeed, over the past ten years Kelly has had numerous civil actions dismissed by this Court as frivolous.

The history of repeated, frivolous and meritless litigation by this plaintiff began at least in April of 2002, when Kelly filed a complaint in the case of Kelly v. York County Prison, No. 4:02-CV-700. On May 3, 2002, the district court dismissed this civil action as frivolous. Kelly v. York County Prison, No. 4:02-CV-700. (Doc. 6) Kelly did not appeal the dismissal of this action as frivolous.

On September 30, 2008, Kelly filed a second civil action in the case of Kelly v. York County Prison, No. 4:08-CV-1813. Like his initial 2002 lawsuit, this action was dismissed by the district court which found Kelly's complaint to be frivolous. Kelly v. York County Prison, No. 4:08-CV-1813 (Doc. 9)  Kelly appealed this dismissal order, Kelly v. York County Prison, No. 4:08-CV-1813, (Doc. 12), but his appeal of this case was dismissed by the court of appeals, Kelly v. York County Prison, No. 4:08-CV-1813, (Doc. 16), and on June 16, 2010, this case was closed by the appellate court with the issuance of its mandate dismissing this appeal pursuant

to 28 U.S.C. § 1915(e)(2)(B)(I).[1] <u>Kelly v. York County Prison</u>, No. 4:08-CV-1813. (Doc. 21)

While this action was pending, Kelly filed a third lawsuit in the case of <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027, on November 6, 2008. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 1)  On January 14, 2009, upon a screening review of this, Kelly's third civil complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 8)   Kelly appealed this dismissal. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 9)

On August 31, 2009, the court of appeals entered an opinion and order in this case, which affirmed the district court's dismissal of the majority of Kelly's claims, but remanded the case to the district court for further consideration of a retaliation claim made by Kelly. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 14) On remand, the district court directed Kelly to file an amended complaint articulating this claim, <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027, (Doc. 20), which was filed

---

[1] 28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious."

by Kelly on December 23, 2009. Kelly v. York County Prison, No. 4:08-CV-2027. (Doc. 21) On August 17, 2010, the district court then entered an opinion and order dismissing Kelly's amended complaint for failure to state a claim upon which relief can be granted, further finding that any " appeal from this Order will be deemed frivolous, without probable cause, and not taken in good faith." Kelly v. York County Prison, No. 4:08-CV-2027. (Doc. 29) Kelly appealed this dismissal order, Kelly v. York County Prison, No. 4:08-CV-2027. (Doc. 32), but his appeal was dismissed by the court of appeals on October 5, 2010. Kelly v. York County Prison, No. 4:08-CV-2027. (Doc. 34.)[2]

### B. Kelly's Current Lawsuit

It is against the backdrop of this history of repeated, frivolous and meritless filings that Kelly instituted the current lawsuit. Two and one-half months after the court of appeals affirmed the dismissal of Kelly's third federal lawsuit, on December 14, 2010, Kelly filed the instant complaint, (Doc. 1), and initially received leave to proceed *in forma pauperis*. (Doc. 14) In this latest a *pro se* civil rights action Kelly,

---

[2]We note that subsequently, in January of 2011, a fourth civil action filed by Kelly, Kelly v. Kline, No. 1:10-CV-2658, was dismissed by this court as frivolous. While we note this fact, we do not consider this fourth dismissal in our assessment of the application of 28 U.S.C. §1915(g) to this case, since that fourth dismissal occurred after the filing of the instant lawsuit.

who was now a prisoner at Lebanon County Correctional Facility, alleged that the defendants, prison officials in Lebanon County, violated the First Amendment to the United States Constitution by interfering with his access to the courts and retaliating against him for engaging in protected conduct. According to Kelly, both of these claims stemmed from alleged violations of his First Amendment rights that occurred during his incarceration at the Lebanon County Correctional Facility. Specifically, according to the well-pleaded facts set forth in his complaint, on October 5, 2010, Kelly received an order from the United States Court of Appeals for the Third Circuit dismissing his appeal of the dismissal of his prior lawsuit in <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Compl., ¶¶1, 2.) Thus, Kelly's current lawsuit expressly acknowledges at least part of his prior history of filing meritless litigation in federal court.

Kelly recites in his complaint that he believed that the dismissal of his appeal stemmed from prison officials mishandling his legal mail and causing delay. (<u>Id.</u>, ¶3.) For this reason, he filed a grievance on October 11, 2010. (<u>Id.</u>, ¶4.) He was denied the relief that he requested in the grievance and filed an appeal, handing it to Officer Barry on October 26, 2010. (<u>Id.</u>, ¶¶5, 6.) After Warden Karne informed him that his earlier appeal did not appear on file, Kelly refiled the appeal, handing it to Officer Joey Santiago on November 17, 2010. (<u>Id.</u>, ¶¶7, 8.) Warden Karne denied the appeal

on December 7, 2010, and Kelly, who was at that time housed in the prison's special housing unit ("SHU"), received the denial on December 10, 2010. (Id., ¶¶9, 10.) Kelly states that he sent more than one letter to the Clerk of the United States Court of Appeals addressing this matter –presumably the potential mishandling of his mail by prison officials–but received no response. (Id., ¶11.)

Kelly grew more concerned about his legal mail as a result of an arraignment proceeding on October 13, 2010, at the Lebanon County Court of Common Pleas. (Id., ¶12.) At the arraignment, the judge informed Kelly that he did not receive a copy of a motion Kelly claimed to have filed asserting ineffectiveness of his appointed counsel, and a motion to recant a preliminary hearing. (Id.) Kelly's copy had been time stamped October 7, 2010, by the clerk of court. (Id.) Refusing to share his lone copy with the judge during the proceeding, Kelly subsequently mailed a copy to the judge's chambers, but did not receive a response. (Id., ¶¶12,13.) In the absence of a response, Kelly sent two follow-up letters to the judge. (Id., ¶14.) Once again, he did not receive a response. (Id.) Though not explicitly stated as such, in pleading these facts and expressing concern over the mishandling of his mail, we understand Kelly to be alleging that the prison officials named as defendants in this action violated his right of access to the courts under the First Amendment of the United States Constitution.

Finally, on December 1, 2010, Kelly sent a complaint concerning a Lebanon County Public Defender to the Disciplinary Board of the Supreme Court of Pennsylvania that was returned to him, marked with "Not Deliverable As Addressed Unable to Forward." (Id., ¶¶15, 16.) Concerned that this piece of mail had also been tampered with, Kelly took up the matter verbally with Warden Hauck, who told him that he was crazy and that he believed everyone was against him. (Id., ¶¶16, 17.) Upset by this interaction, Kelly sent Warden Hauck a letter defending his own sanity and expressing concerns about his legal mail. (Id., ¶18.) On December 8, 2010, Kelly met with Counselor Tina Verna to discuss the issues with his legal mail. (Id., ¶19.) The following day she informed him of the proper address of the Disciplinary Board via email. (Id., ¶22.) It upset Kelly that Counselor Verna acquired the correct address from the Public Defender's Office, which she apparently had done in light of the complaint's allegations against a public defender. (Id., ¶24.) Kelly expressed his disapproval in an Inmate Request Form directed to Counselor Verna that he handed to Officer Van Dusen. (Id., ¶25.) After reading the request form, Officer Van Dusen contacted Warden Hauck. (Id., ¶26.)

Warden Hauck called Kelly to the block office. (Id.) From there, Kelly was sent to the Special Housing Unit ("SHU"), where he was provided with a misconduct report. (Id.) The misconduct report cited Kelly's allegations concerning the mail,

argumentative and disagreeable behavior toward staff, and quotes the request slip that Kelly had directed at Counselor Verna. (Id., ¶27.)  The quote from Kelly's request slip reads, "Why would you request the address from the public defenders office? Now I see how you work. Your [sic] in cohoots [sic] with them. I should have known better than to trust you being that your [sic] married to a detective." (Id.) The Warden ordered a major misconduct in response to this behavior, writing that "[Kelly] is constantly trying to make everything seem like he is 'plotted' against by prison staff. I feel that staff don't have to be falsely accused of conspiring against an inmate when in truth they were actually trying to help him solve a problem." (Id.)  Petitioner alleges that the punishment he received for submitting the request slip violated his rights under the First Amendment to the United States Constitution. (Id., ¶29.)

  Notably absent from Kelly's complaint is any allegation that this "prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).  Indeed, Kelly cannot credibly claim to be at risk of serious bodily injury in the Lebanon County Prison since it is wholly undisputed that he is no longer housed at that facility but rather has been transferred to the State Correctional Institution at Camp Hill. (Doc. 40)

## II. DISCUSSION

### A. 28 U.S.C. §1915(g)– The Legal Standard.

Under the Prison Litigation Reform Act, this Court has an affirmative duty to screen and review prisoner complaints filed by inmates like Kelly who seek leave to proceed in forma pauperis. 28 U.S.C. §1915A.  One aspect of this review, a review "designed to filter out the bad claims and facilitate consideration of the good," Jones v. Bock,  549 U.S. 199, 204 ( 2007), entails ensuring that inmates who have abused this privilege in the past are not permitted to persist in further *in forma pauperis* litigation.  Towards that end, Congress enacted 28 U.S.C. §1915(g), which provides in pertinent part that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Congress enacted 28 U.S.C. § 1915(g) with the express purpose of "[d]eterring frivolous prisoner filings in the federal courts [a goal which] falls within the realm of Congress' legitimate interests." Abdul-Akbar v. McKelvie, 239 F.3d 307, 318-319

(3d Cir. 2001). With this goal in mind, it is well-settled that, "generally, a prisoner may not be granted IFP [*in forma pauperis*] status if, on three or more occasions, he brought an action that was dismissed as frivolous," Brown v. City Of Philadelphia, 331 F.App'x. 898, 899 (3d Cir.2009), and inmates who attempt to bring such lawsuits *in forma pauperis* should have their complaints dismissed. Id.

In determining whether a particular inmate-plaintiff has had three prior dismissals, or "three strikes," under §1915(g), we look to the status of the plaintiff's prior litigation history at the time he filed the current lawsuit. Thus, only dismissals which were actually ordered at the time of the filing of the instant case are counted towards a "three strike" assessment under §1915(g), and "[a] dismissal does not qualify as a 'strike' for § 1915(g) purposes unless and until a litigant has exhausted or waived his or her appellate rights. See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir.1999); Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir.1996)." Lopez v. U.S. Dept. of Justice, 228 F. App'x 218 (3d Cir. 2007). However, in assessing when a particular inmate plaintiff is subject to the gatekeeping provisions of § 1915(g), it is also clear that "lawsuits dismissed as frivolous prior to the enactment of the PLRA count as 'strikes' under § 1915(g). See Adepegba v. Hammons, 103 F.3d 383 (5th Cir.1996); Abdul-Wadood v. Nathan, 91

F.3d 1023 (7th Cir.1996); Green v. Nottingham, 90 F.3d 415 (10th Cir.1996)." Keener v. Pennsylvania Bd. of Probation & Parole, 128 F.3d 143, 144 (3d Cir. 1997).

Once it is determined that an inmate-plaintiff has had three prior lawsuits dismissed "on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g) compels denial of *in forma pauperis* status and dismissal of *in forma pauperis* lawsuits unless the inmate alleges that he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). With respect to this specific statutory exception, it is clear that:

> The clause "unless he is in imminent danger of serious physical injury" is an exception to the preclusive effect of the statute. But the exception is cast in the present tense, not in the past tense, and the word "is" in the exception refers back to the same point in time as the first clause, i.e., the time of filing. The statute contemplates that the "imminent danger" will exist contemporaneously with the bringing of the action. Someone whose danger has passed cannot reasonably be described as someone who "is" in danger, nor can that past danger reasonably be described as "imminent."
>
> Abdul-Akbar v. McKelvie, 239 F.3d at 313.

Moreover, in making this assessment of imminent danger:

> A court need not accept all allegations of injury made pursuant to § 1915(g). To the contrary, a court may discredit "factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.' " Gibbs v. Cross, 160 F.3d 962, 967 (3d Cir.1998) (citing

> Denton v. Hernandez, 504 U.S. 25, 33 (1992)). The Supreme Court has directed that, in assessing a case under 28 U.S.C. § 1915, we are not required to accept without question the truth of the plaintiff's allegations. See Denton, 504 U.S. at 32. Rather, we may be guided by judicially noticeable facts in determining whether the allegations are baseless or wholly incredible.
>
> Brown v. City Of Philadelphia, 331 F.App'x at 900.

Judged against these legal standards, we find that, entirely aside from the grounds for dismissal previously identified by the Court, (Doc. 41), pursuant to 28 U.S.C. §1915(g), Kelly's current *in forma pauperis* complaint should be dismissed in its entirety. At the outset, it is evident that the first prerequisite for the application of §1915(g)'s gatekeeping rule is fully met here, in that Kelly has had three prior federal lawsuits dismissed "on the grounds that [they were] frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). Each of these dismissals pre-dated the filing of the instant lawsuit, and in each instance the order dismissing the case had become final prior to Kelly instituting the instant case. Lopez v. U.S. Dept. of Justice, 228 F.App'x 218 (3d Cir. 2007). Thus, Kelly comes before this Court with "three strikes."

Nor can Kelly avail himself of the "imminent danger" exception to § 1915(g)'s preclusive effect. Kelly has not pleaded in his complaint that he was in imminent danger of serious bodily injury, (Doc. 1), and the nature of his claims–which related

13

to interference with mail and First Amendment retaliation–do not lend themselves to assertions of imminent bodily harm. Indeed, since "[s]omeone whose danger has passed cannot reasonably be described as someone who 'is' in danger, nor can that past danger reasonably be described as 'imminent,'" Abdul-Akbar v. McKelvie, 239 F.3d at 313, it is apparent that Kelly– who is no longer housed at Lebanon County Prison– cannot claim that he faces any imminent bodily danger as a result of events at that institution. Thus, on these facts where Kelly is no longer housed in the prison where he claims that these incidents took place, this Court could justifiably discredit any belated "factual claims of imminent danger [as] 'clearly baseless,' i.e., allegations that are fantastic or . . . rise to the level of the 'irrational or wholly incredible.' " Gibbs v. Cross, 160 F.3d 962, 967 (3d Cir.1998).

In sum, all of the statutory prerequisites for imposition of §1915(g)'s bar against further *in forma pauperis* litigation by this *pro se* prisoner-plaintiff are fully met here. Therefore, consistent with §1915(g)'s statutory mandate, it is recommended that Kelly be denied further leave to proceed *in forma pauperis*, and this complaint should be dismissed in its entirety.

### IV.  Recommendation

Accordingly, for the foregoing reasons, pursuant to 28 U.S.C. § 1915(g), IT IS RECOMMENDED that the plaintiff's motion for leave to further proceed *in forma*

*pauperis* be DENIED and that the plaintiff's *in forma pauperis* complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of September, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
